IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDY CHITWOOD,                          )
                                         )
            Plaintiff,                   )    Civil. No. 05-6057-HO
                                         )
                                         )
                   v.                    )    ORDER
                                         )
GEORGIA-PACIFIC CORPORATION, a           )
Georgia corporation,                     )
                                         )
            Defendant.                   )
_____)

Plaintiff brings this action asserting claims of discrimination based on her sex under Title VII and under state law, and intentional infliction of emotional distress.

Defendant currently employs plaintiff in the secondary fiber department as a process operator at its paper mill located in Halsey, Oregon. Plaintiff's job involves recycling paper products, including magazines. Plaintiff has worked for defendant for 33 years, fourteen of which have been in the secondary fiber

department.   Approximately 28 people work in the secondary fiber department.   Plaintiff is one of two females employed in the secondary fiber department.

The secondary fiber department is supervised by a technical advisor (also called a team leader) who is a management employee. The department is organized into four shifts.   Each shift has a lead operator who is an hourly employee.   The lead operator's main function is to assign and schedule the shift crew to the various positions in the department.   Plaintiff's husband, Wayne Chitwood, was the lead operator for plaintiff's shifts during the times pertinent to this case.

Defendant has anti-discrimination harassment and anti-sexual harassment policies pursuant to which complaints are to be made to an employee's supervisor, the local or divisional human resources manager, or the corporate EEO department in Atlanta, Georgia. Plaintiff is familiar with the policies.

In 1999, plaintiff had a confrontation with a coworker (Mark Elder) in which she stated "the old Sandy Chitwood would have called you a fuck wad."  Elder complained to management regarding plaintiff's conduct, resulting in a reprimand to plaintiff. Plaintiff argued that the discipline was unfair because other employees used such language without discipline.   Plaintiff's grievance of the reprimand was denied.

In 2003, management again received complaints regarding plaintiff's conduct toward Elder.    Elder complained to the corporate EEO department about harassing conduct.    Defendant conducted an investigation which revealed further coworker complaints about plaintiff's conduct.    Plaintiff admitted using abusive and profane language and defendant reprimanded plaintiff and referred her to the employee assistance program (EAP). Plaintiff grieved the reprimand because she believed she was being singled out.    After denial of the grievance, the union requested arbitration.    The parties settled just prior to arbitration and plaintiff and the union agreed that the reprimand was appropriate.

Plaintiff contends that she has repeatedly complained about profane language and gestures and pornographic materials. Plaintiff asserts that no male employees have been disciplined for using profanity or viewing pornographic materials, but she has been disciplined for using profane language.    Plaintiff further asserts that she has been retaliated against for complaining about gender discrimination and that her complaints of discrimination have been ignored.

DISCUSSION

A.    State and Federal Sex Discrimination Claims

Plaintiff alleges three theories os sex discrimination: (1) disparate treatment based on gender; (2) hostile work environment; and (3) retaliation.

1.    Retaliation

Plaintiff did not allege a claim for retaliation before the Equal Employment Opportunity Commission (EEOC).  The filing of an EEOC charge is a prerequisite to bringing a civil action under Title VII.  42 U.S.C. § 2000e-5(b); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002).  The scope of a civil action alleging discrimination is limited by the charge filed with the EEOC.  See Limongelli v. Postmaster General, 707 F.2d 368, 373 (9th Cir. 1983). Claims regarding incidents not listed in an EEOC charge may nevertheless be asserted in a civil action if they are "like or reasonably related to the allegations of the EEOC charge." See Id. In other words, subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge. B.K.B., 276 F.3d at 1000.  This determination includes consideration of "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named

in the charge, and any locations at which discrimination is alleged to have occurred." Id.

Plaintiff's EEOC charge alleges sex discrimination based on disparate treatment and hostile work environment. Plaintiff's EEOC allegations include assertions that after she complained about alleged sexually based comments, she was disciplined. Although the complaint before this court is not clear as to the conduct plaintiff alleges was retaliatory, plaintiff now asserts that she complained about profanity, obscene gestures and pornographic materials in the workplace on several occasions and relies on the reprimands in 1999 and 2003 as evidence of retaliation. See Response (#45) at p. 31. Plaintiff also contends that a dollar bill was placed in a "coffee club" box with the words "get fucked" on it (from an unknown source) and contends it was in retaliation for complaints of harassment.

Plaintiff was represented by counsel before the EEOC and made no attempt to include allegations of retaliation. Plaintiff makes no showing that the investigation revealed retaliation. As will be seen below, plaintiff provides very little evidence of complaints being made to management and to the extent there were complaints to other than coworkers, they appear to be one to six years removed from the reprimands. The bare allegation of discipline following complaints before the EEOC is thin, but could lead to investigation of retaliation. The EEOC allegation about discipline is unrelated

to the allegation regarding the dollar bill in the "coffee club" box. Summary judgment is denied as to the failure to exhaust the retaliation claim before the EEOC.

Defendant also contends that plaintiff fails to make a prima facie case for retaliation. To make out a prima facie case of retaliation, plaintiff must establish "that she acted to protect her Title VII rights, that an adverse employment action was thereafter taken against her, and that a causal link exists between those two events." Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994).[1]

Plaintiff argues that she complained of profanity, obscene gestures and pornographic materials and that following the complaints she was reprimanded. Plaintiff also notes the "coffee club" incident. Plaintiff offers nothing more than speculation that the coffee club incident was in retaliation for complaints of sexual harassment.[2]

---

[1]Title VII law is instructive in interpreting ORS 659.030 as well. Harris v. Pameco Corp., 170 Or. App. 164, 179. (2000).

[2]Plaintiff states that she does not know who placed the dollar in the box, "but she knows it was directed at her because she is the only person with access to the box and all employees are aware of that. The writing on the dollar bill was so large a person could not have mistakenly placed the dollar bill in the box without knowing the writing was there." Plaintiff offers no evidence of the retaliatory motive behind this incident or that defendant is responsible. Moreover, there is no evidence such action is an adverse employment action.

The only adverse employment actions plaintiff points to are the reprimands she received in 1999 and 2003.[3]  Plaintiff does not make clear the dates of the alleged complaints.  Plaintiff contends she made complaints on "several" occasions.  Plaintiff asserts that she complained to "anyone and everyone who would listen" and to secondary fiber operators (SFO) and other coworkers that she was offended by language and pornography.  Plaintiff acknowledges that she has only made three formal complaints about pornography to management in 1998, 2002, and 2004.  Only the 1998 and 2002 complaints occurred before the discipline alleged to have been retaliatory and in each case about one year prior to the reprimands.  Thus, the causal link between the complaints and the discipline is weak.  Moreover, it appears that plaintiff has distorted the record regarding complaints made to human resource

---

[3]Plaintiff also asserts that attendance at the EAP training was an adverse employment action.  Plaintiff contends that she was required to use vacation time to attend and had to resign from higher paying training to attend EAP.  However, plaintiff takes liberty with the record in this regard.  Plaintiff actually testified that she could "skip [EAP] but I wanted to get it over with and it was easier going on my vacation than going after graveyard."  Chitwood Deposition at p. 151 (attached to Declaration of Kristin Bremer (#56) as exhibit Ex A).  Plaintiff also testified that no one told her she couldn't work as a trainer and was told she could do both training and EAP.  Chitwood Deposition at 131-132.  Moreover, EAP is not an adverse employment action.  See Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 273 (1996) (mandatory placement in a "coaching" program does not rise to the level of a materially adverse employment action); Wible v. Widnall, 1998 WL 259892 (D.Kan. 1998) (The court has serious doubts, whether directing plaintiff to the EAP is an "adverse employment action" for purposes of establishing plaintiff's prima facie case.).

7 - ORDER

manager, Joe Hertig.[4]  At best, plaintiff offers nothing more than speculation that the disciplinary actions were in retaliation for asserting her Title VII rights.[5]  The motion for summary judgment with respect to plaintiff's retaliation claim is granted.


   2.   Disparate Treatment based on Gender

     Defendant argues that plaintiff's federal sex discrimination claim is time-barred.  Plaintiff relies on her June 8, 1999 reprimand and July 16, 2003 reprimand for the basis for her sex discrimination claim.  Defendant presents evidence that plaintiff filed her EEOC charge on May 25, 2004.  See Carey Declaration (#31) at Ex. K. p. 23.  Plaintiff presents evidence that the charge was actually received on May 12, 2004.  See Affidavit of Counsel (#48) at Ex. 14.  Assuming the return receipt offered by plaintiff is related to her properly filed charge with the EEOC, then May 12, 2004, is the date plaintiff initiated administrative proceedings.

---

[4]Compare Response at p. 7 (complaints before 2003 discipline) with Chitwood Deposition at p. 90 (attached to #31 as exhibit A) (only notes a complaint to Hertig occurring after the 2003 discipline).

[5]Defendant has moved to strike many portions of the evidence plaintiff offers to challenge the summary judgment motion.  The record has been somewhat distorted by plaintiff and in some cases outright contradicted.  Plaintiff's contradictions between her testimony in depositions and declarations in response to summary judgment are fair game for attack on her credibility at trial and may be stricken for purposes of plaintiff's case-in-chief, but the court declines to strike materials submitted by plaintiff at this time.

Plaintiff was required to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment action. 42 U.S.C. § 2000e-5(e)(1). Assuming May 12, 2004, is the filing date, plaintiff cannot rely on acts occurring prior to July 15, 2003.[6] Accordingly, plaintiff's reliance on her July 16, 2003 reprimand is not time-barred. However, plaintiff may not rely on the June 8, 1999 reprimand, nor may she rely on her attendance at EAP for the reasons noted in footnote 3, supra. Plaintiff does not rely on the continuing violations doctrine for her sex discrimination claim. The motion for summary judgment is granted only to the extent that plaintiff may not rely on anything other than the July 16, 2003 reprimand and denied otherwise.

Defendant also moves for summary judgment on portions of plaintiff's state law discrimination claim as time-barred. Curiously, plaintiff asserts the continuing violation theory in this instance arguing defendant has failed to cite state law concerning Oregon's one year statute of limitations. Plaintiff cites no legal authority of her own.

Oregon has a one year statute of limitations for claims brought pursuant to ORS § 659A.030. ORS §§ 659A.870-75. Consequently, claims occurring prior to May 12, 2003 are time-

---

[6]Plaintiff only offers the return receipt (indicating only the EEOC address and not the contents of the letter sent) as evidence of the charge date, while defendant offers evidence that the formal charge was made on May 25, 2003. See, e.g., Cary Declaration at Ex. K, pp. 12, 23.

barred.  As noted above, Oregon law relies on federal courts' interpretation of Title VII and, under <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002), the continuing violations theory does not apply to discrete discriminatory acts, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.  Consequently, plaintiff's state law sex discrimination claim related to the June 8, 1999 reprimand is time-barred and summary judgment is granted to that extent.

Defendant also seeks summary judgment on plaintiff's disparate treatment claim asserting that she has no evidence that the reprimand had anything to do with her gender.

In order to establish a prima facie case of employment discrimination, plaintiff must show that she was a member of a protected group; that she was adequately performing her job; and that she suffered an adverse employment action, or was treated differently from others similarly situated. <u>See McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  Defendant offers the declaration of the human resource manager at the Halsey Mill, Joe Hertig, that

> Similar to reprimanding plaintiff for using demeaning and abusive language toward a coworker, Georgia Pacific consistently reprimands employees who act inappropriately or aggressively toward coworkers.  Since 2002, the mill management dealt with five incidents of co-worker-to-coworker harassment or aggression.  The level of reprimand ranged from verbal reprimand to a two week suspension in conjunction with EAP referrals.  Four of

the incidents involved male-to-male altercations and one of the incidents involved female-to-male altercation. Declaration of Joe Hertig (#34) at pp. 1-2. In addition, subsequent to oral argument, defendant submitted evidence of specific disciplinary action taken against male employees for harassing and aggressive conduct toward coworkers at the Halsey mill. See Declaration of Kristin L. Bremer (#65).

Plaintiff offers deposition testimony of union heads that they are unaware of reprimands at the Halsey mill for actions similar to plaintiff's conduct other than verbal warnings.[7] As noted above, however, defendant has submitted employment records demonstrating that other male employees have received reprimands for conduct similar to plaintiff's actions.[8] Consequently, plaintiff fails to present issues of fact that she was treated differently from others similarly situated. Accordingly, defendant's motion for summary judgment is granted as to plaintiff's disparate treatment based on gender claim.

---

[7]Plaintiff also suggests that defendant has failed to produce any policy prohibiting the viewing of offensive or sexually explicit materials. It is not clear how this relates to her disparate treatment claim. Defendant has an explicit policy (that plaintiff acknowledges) prohibiting "displays of sexually explicit pictures, cartoons, or other materials." Plaintiff apparently feels that a prohibition of display does not equal a prohibition of viewing.

[8]The reprimands included suspensions and referrals to EAP. Plaintiff suggests the evidence should be stricken because it was not provided when the motion for summary judgment was filed and because it is hearsay. However, plaintiff has been given an opportunity to respond to the evidence and it is properly considered as a business record. Plaintiff's suggestion that the evidence is irrelevant is similarly unavailing.

3.    Hostile Work Environment

A hostile environment exists when an employee can show

> (1) that he or she  was subjected to sexual advances,
> requests for sexual favors, or other verbal or physical
> conduct of a sexual nature, (2) that this conduct was
> unwelcome, and (3) that the conduct was sufficiently
> severe and pervasive to alter the conditions of the
> victim's employment and create an abusive working
> environment.

Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991).  The

required showing of severity or seriousness of the harassing

conduct varies inversely with the pervasiveness or frequency of the

conduct.  Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463,

n.4 (9th Cir. 1994).

Conduct that is not severe or pervasive enough to create an

objectively hostile or abusive work environment is beyond the reach

of Title VII, but "Title VII comes into play before the harassing

conduct leads to a nervous breakdown.  An abusive work environment,

even one that does not seriously affect employees' psychological

well-being, can and often will detract from employees' job

performance, discourage employees from remaining on the job, or

keep them from advancing in their careers."  Harris v. Forklift

Sys., Inc., 510 U.S. 17 (1993).  Whether an environment is hostile

or abusive is determined by looking at all the circumstances,

including "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance." No single factor is required. Id. The continuing violation theory permits plaintiff to include conduct occurring beyond the 300 day limit noted above. See National Railroad Passenger Corp., 536 U.S. at 117.

Plaintiff's claim is based on the alleged frequent use of sexually charged profane language in the workplace and the constant display of pornography. Defendant notes that plaintiff herself engaged in use of profanity and thus cannot now claim that the conduct was unwelcome. Defendant also contends that plaintiff only complained about the use of profanity after she was disciplined not because she was offended, but because she believed she was singled out. However, plaintiff also relies on instances of pornographic material in the workplace. And while plaintiff's memory now seems to include many more instances of pornography in the work place than during her deposition, that is an issue of credibility and not a demonstration of lack of genuine issue if fact. Moreover, plaintiff now testifies that she was indeed offended by the profane language in the workplace. Again this appears to be an issue for the jury regarding plaintiff's credibility. Assuming, plaintiff's version of the facts to be correct that sexually charged language was used on a regular basis (regardless of whether it was directed at plaintiff so long as some hostility was directed at plaintiff)

and that pornography was regularly[9] found in the workplace, is sufficient to create an issue of fact as to each element of plaintiff's hostile work environment claim.[10]  The evidence strongly suggest that to the extent that management knew of pornography, it took prompt remedial action.  However, plaintiff's testimony and the testimony of others that pornography continued to appear in the work place, in addition to the profane language, creates issues of fact that a hostile work environment existed, that defendant knew about it and failed to adequately remediate it.  This is especially true in light of the evidence of regular use of profane and sexually charged language in front of supervisors.

B.   Intentional Infliction of Emotional Distress

       To prevail on an intentional infliction of emotional distress claim, plaintiff must demonstrate that (1) defendant intended to inflict severe emotional distress, (2) defendant's acts were the cause of plaintiff's severe emotional distress, and (3) defendant's

---

[9]Plaintiff's deposition testimony only supports four occasions of pornography such as magazines in the workplace or R Rated videos with nudity being viewed in the workplace.  Plaintiff admitted that on the two occasions she complained, management removed the material.  However, plaintiff now declares that nothing changed in the workplace regarding pornography and offers testimony of others that pornography regularly appeared.  Plaintiff contradicts her deposition testimony in an attempt to paint certain types of coworkers as management.  The record only supports two complaints made by plaintiff to management.

[10]Defendant makes much of the small number of complaints formally made by plaintiff.  However, formal complaints are not required to prove a hostile work environment.  It is for a trier of fact to determine whether the lack of complaints refutes plaintiff's assertions of unwelcome conduct.

acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. McGanty v. Staudenraus, 321 Or. 532, 543 (1995).

The intent element of IIED is satisfied not only where the actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain to result from his conduct. McGanty, 321 Or. at 550.

The Oregon Supreme Court has noted that the duty to refrain from abusive behavior in the employment relationship comes close to that of the physician toward a patient. Hall v. The May Department Stores Co., 292 Or. 131, 138 (1981). Thus, the employment relationship may impose a more demanding obligation to refrain from inflicting mental and emotional distress. See id. The consideration of the relationship between the alleged tortfeasor and the alleged victim is relevant to the inquiry regarding the conduct element. See Rockhill v. Pollard, 259 Or. 54, 63 (1971).

It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If the minds of reasonable men would not differ on the subject, the court is obliged to grant summary judgment. Pakos v. Clark, 253 Or. 113, 132 (1969).

Various factors bear upon the offensiveness of the conduct, including whether a special relationship exists between the

15 - ORDER

defendant and the plaintiff, such as that of physician-patient, counselor-client, or common carrier-passenger. <u>Williams v. Tri-County Metropolitan Transportation District of Oregon</u>, 153 Or.App. 686, 689-90 (1998); <u>Erickson v. Christenson</u>, 99 Or.App. 104, 107, rev dismissed 311 Or. 266 (1991). Other factors include whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual. <u>See</u> <u>Checkley v. Boyd</u>, 170 Or.App. 721 (2000). The setting in which the allegedly outrageous conduct occurs--for example, in a public venue or within the employment context--also can bear on the degree of offensiveness of the conduct. <u>See, e.g.</u>, <u>Hall</u>, 292 Or. at 137; <u>Trout v. Umatilla Co. School Dist.</u>, 77 Or.App. 95, 102 (1985).

"Oregon cases which have allowed claims for intentional infliction of emotional distress to proceed typically involve acts of psychological and physical intimidation, racism, or sexual harassment." <u>Garrison v. Alaska Airlines, Inc.</u>, Civil No. 98-433-KI, Opinion by Judge King dated June 17, 1999, p. 8.

The mere fact that an employer overworks employees, makes unreasonable demands upon them, and is otherwise less than a model employer does not by itself constitute an extraordinary transgression of the bounds of socially tolerable conduct under Oregon law. <u>Cf</u> <u>Madani v. Kendall Ford Co.</u>, 312 Or 198, 203-06 (1991) (terminating employee for refusing to pull down his pants); <u>Patton v. J.C. Penney Co.</u>, 301 Or 117, 124 (1986) (employee

terminated because he refused to stop dating co-worker); Watte v.
Edgar Maeyens, Jr., M.D., P.C., 112 Or.App. 234, 237 (1992)
(employer threw a tantrum, screamed and yelled at his employees,
accused them of being liars and saboteurs, then fired them all);
Snyder v. Sunshine Dairy, 87 Or.App. 215, 218 (1987) (inconsistent
and excessive supervision, unjustified reprimands, threats of
termination, requiring the employee to perform menial tasks). See
also Wells v. Thomas, 569 F.Supp 426, 433 (EDPa 1983) (placing
plaintiff in newly created position without responsibilities,
taking away her private office, reassigning her secretary, allowing
her phone calls to go unanswered, giving her poor performance
evaluations for the first time in 25 years, and terminating her);
Beidler v. W.R. Grace, Inc., 461 F.SUPP 1013 (EDPa 1978), aff'd 609
F.2d 500 (3rd Cir. 1979) (plaintiff excluded from meetings necessary
to perform his job, found papers constantly rearranged on his desk
to annoy him, informed he would be given a new assistant without
consultation, learned from rumors that his job was in jeopardy, and
evaded by his superior who intimated that the new assistant would
be replacing him).

The profane language and pornography plaintiff alleges she was
subject to is not enough to demonstrate an extraordinary
transgression of the bounds of socially tolerable conduct
especially in light of the few complaints made to management.
Moreover, plaintiff fails to present evidence of severe emotional

17 - ORDER

distress.   The motion for summary judgment as to this claim is granted.

## Motion to Strike

Defendant moves to strike much of the evidence plaintiff presents in opposition to the motion for summary judgment. Defendant moves to strike statements in plaintiff's and plaintiff's counsel's affidavits that contradicts her prior testimony, that are not supported by the record, and rely on hearsay statements. However, the court will only rely on the evidence noted above.  The motion to strike is denied as moot.   In addition, to a certain extent, plaintiff's contradictions and stretching of the record is more of a credibility issue than an admissibility issue.

Defendant also moves to strike plaintiff's over length concise statement of facts.  The motion is denied.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (#29) is granted in part and denied in part and defendant's motion to strike (#51) is denied without prejudice to raise in a motion in limine if necessary.

DATED this __20th__ day of July, 2006.

_____s/ Michael R. Hogan_____
United States District Judge

18 - ORDER